The St. Kevin Mining Company, Appellant, v. Isaacs, Appellee.

1. Practice under Mechanics' Lien Act.
A personal judgment for the amount found to be due may be rendered in an action to foreclose a mechanics' lien, notwithstanding an abandonment of the claim for a lien.

2. Stare Decisis.
The power of the court to enter such a judgment having been held in *Cannon v. Williams*, 14 Colo. 22, it is *stare decisis*, and will be followed; certainty in the practice being of primary importance.

3. Practice—Error Cured.
Error in striking out evidence is cured by afterwards permitting the witness to testify fully upon the same point.

4. Immaterial Error.
Unprejudicial errors do not warrant the reversal of a judgment.

*Appeal from the District Court of Lake County.*

This action was commenced in the district court of Lake county to recover the sum of $11,380.70. The appellee alleges in his complaint that this amount was due for work and labor performed, and materials furnished, upon the property of the St. Kevin Mining Company, at its special instance and request. He sues to establish a mechanic's lien upon certain real property of the defendant company for the amount of his claim. Afterwards, and before trial, plaintiff abandoned his claim for a lien, and proceeded only upon the money demand. A trial to a jury resulted in a verdict and judgment in his favor for the sum of $2,314.59. Appellant, in this court, admits owing appellee, for services rendered, the sum of $991.59, but claims that, in so far as the judgment is in excess of this sum, it is unfounded.

Mr. T. A. Dickson, for appellant.

Mr. J. Stanley Jones, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This being an action to enforce a mechanic's lien under the statute, the appellant contends that a judgment for money is not warranted, the claim of a lien having been abandoned. This was undoubtedly, at one time, the law in this state. See *Hart v. Mullen*, 4 Colo. 512. But in the case of *Cannon v. Williams*, 14 Colo. 22, a majority of the court held that this rule was changed by the mechanic's lien act of 1883; and, although the writer of this opinion did not concur in that conclusion, nevertheless, it having been pronounced by a majority of the court, it must now be considered as controlling the practice in this state. The present action having been begun under the lien law of 1883, the power of the court to enter a money judgment, notwithstanding the failure of the plaintiff to sustain his lien, is *stare decisis*, and will be followed; certainty in the practice being of first importance.

At the trial it was conceded that plaintiff was employed and rendered services for the defendant company for a number of years. There was much contention, however, as to the terms of this employment, and as to the length of time it continued; the plaintiff contending that he was employed at the rate of $150 per month until such time as the mines of the company should be running smoothly, and that then he was to receive the usual compensation allowed mining superintendents at Leadville. The defendant claims the contract to be that the plaintiff was to receive $150 per month until such time as the mines of the company should reach a dividend-paying basis, and that, as no dividends had ever been paid, the amount of his compensation was to be computed upon the basis of $150 per month, only. Plaintiff claims that he commenced work for the defendant company, under his contract, on the first day of September, 1885, and continued in the discharge of his duties as superintendent until the 1st day of October, 1888. The defendant, while admitting that plaintiff commenced work at the time stated,

claims that he was discharged by the company on the 1st day of January, 1888, and rendered no service after that time for which the company could be held liable. It is apparent from the record that the jury disregarded the plaintiff's claim for an increase of compensation, but found that his employment continued until the 1st day of October, 1888, i. e. for nine months beyond the time at which it is claimed by appellant that he was discharged. The evidence as to the duration of plaintiff's services for the company is quite conflicting. It appears, however, that he remained in the employment of the defendant company, as superintendent of its property in Lake county, on the premises, up to the 12th day of December, 1887 ; that shortly prior to this date he was requested by the company to go to New York to assist in selling the mine. In pursuance of this request he went to New York. He testifies that on several occasions after that date, at the request of the company, he went with its president to interview different parties for the purpose of selling the mine ; that he remained in New York until the 19th day of September, 1888, at which date he had some disagreement with the president ; and that a few days after he left, and returned to Leadville. The plaintiff, upon the witness stand, denies positively that he was ever discharged. He says that he was never spoken to with reference to the company dispensing with his services, and states that on frequent occasions during the time he was in New York, Mr. Hassell said to parties, in his presence, that he (plaintiff) was in the employ of the defendant company, and that he need not worry because he was doing so little work ; that his salary was going on just the same. This testimony is corroborated by several other witnesses. As against this testimony, we have the testimony of Mr. Hassell, to the effect that when plaintiff arrived in New York, in December, 1887, he was in a helpless condition, physically and mentally ; that he remained in that condition about two months, under the care of the doctor, and under the influence of chloroform, more or less ; that, as soon as plaintiff was able to discuss business matters, witness no-

tified him that he was no longer in the employ of the com-
pany, and that he could not return to Leadville in any official
capacity whatsoever in connection with the St. Kevin Min-
ing Company ; that his service with the company had ceased.
This witness is indefinite as to the time at which he claims
he. made these statements to the plaintiff.   This is practi-
cally all the testimony in reference to the alleged discharge
of the plaintiff, and under the circumstances it is not a mat-
ter of surprise that the jury found that he had not been
discharged, and allowed him to recover his salary as super-
intendent until the 1st day of October, 1888.   A continuous
employment for upward of two years having been shown, the
burden was upon the defendant to show a termination of
such employment.   The preponderance of evidence, however,
seems to be in support of the findings of the jury to the
effect that such employment was not terminated as claimed
by the company.   A circumstance going to show that plain-
tiff was not discharged, as claimed by Mr. Hassell, is found
in the fact that it is admitted by all parties that nothing was
said about any settlement, although the company at the time
was admittedly owing the plaintiff in the vicinity of $1,000.
If there had been a discharge, it is reasonable to conclude
that something would have been said in reference to the pay-
ment of the amount due.

The appellant company contends that the court erred in
the rejection of certain evidence offered by it.   It claims as
one ground why it sought to terminate the services of the
plaintiff on January 1, 1888, that, some time during the pre-
ceding month, plaintiff, by reason of sickness, old age, and
mental infirmities, became unable to perform the services he
had undertaken to perform.   To establish this fact the wit-
ness G. L. Hassell was asked : " What was Mr. Isaacs' con-
dition physically and mentally, at the time that he reached
New York ; and when did you first learn of his condition at
that time ? "   In answer to this question the witness stated
that plaintiff, at the time, was neither mentally nor physi-
cally competent to do anything.   This answer was stricken

out, upon motion, and to this ruling an exception was duly reserved.    If this was error, it was immediately cured, as the witness was permitted, in answer to further interroga-tories, to state fully plaintiff's condition at the time, as will appear from the following questions and answers appearing in the record: "Question. Now, Mr. Hassell, what, if any-thing, did you say to Mr. Isaacs after his return from Lead-ville in December, 1887, about terminating his relations with the company?    (After objection, the witness answered:)' Answer. Well, I could not state just how soon it was.    In the course of a couple of months, perhaps, after he returned; having been under the doctor's care, the doctor visiting him daily, and the physician had told me he was in a precarious state, and never would be able to go there.    I waited until he was in a calm state, when he wanted to return here, and I told him he never could return to Leadville in the capacity of any official whatever for the St. Kevin Mining Company. Q. You think that was about two months after he got back? A. Just as soon as he was able to hear it.    Q. Now, why was it that you—Did you make the communication to Mrs. Isaacs soon after their return, and; if so, when?    A. I told her, perhaps, within the course of a week after the return, of course he would never be able to go back there again, from the fact my letter brought him on as much as anything else from what we got from Mrs. Isaacs, and the fact that he was losing his mind.    She told Mr. Knowlton that, and Mr. Knowlton will testify to it.    Q. Now, Mr. Hassell, why was it that you did not notify him sooner?    State what the con-dition of his mind was as to receiving such news.    A. Well, he had been kept under chloroform for two months,—under the influence of chloroform because he was in such pain.    He had a bad eye, besides.    He would be delirious a great deal of the time.    He would talk about everything.    He was in no condition to talk to.    Q. It was because of his inability to understand anything?    A. It was simply useless to talk to a man in his condition at that time, but I told his wife."    It was admitted by appellant that plaintiff was entitled to pay

for his services until the 1st day of January, 1888, and from the foregoing it will be seen that he was allowed to testify fully in regard to appellee's condition after that date; and, even without objection, volunteered the alleged statements of others, made to him with reference to his condition prior to leaving Colorado.

The court refused to allow witnesses to testify as to what third parties had said in reference to plaintiff's physical and mental condition before leaving Leadville, and this ruling is assigned for error. Such testimony was clearly hearsay, and therefore incompetent. The trial judge refused to allow other witnesses to testify as to plaintiff's condition of health early in the month of December, 1887. Such testimony could have no bearing upon the issues presented to the jury, except, possibly, in so far as it might have tended to establish his condition after the 1st day of January, 1888. As there was an abundance of direct evidence showing his condition after that date, the exclusion of the evidence cannot justly be regarded as prejudicial or reversible error.

The judgment will be affirmed.

*Affirmed.*

MR. JUSTICE GODDARD, having presided at the trial in the court below, did not sit in this case.